[Civ. No. 24854. Fourth Dist., Div. One. Dec. 6, 1983.]

In re the Marriage of LYNN SELLMAN and ARTHUR ALARCON.
LYNN SELLMAN ALARCON, Respondent, v.
ARTHUR ALARCON, Respondent;
JUDGES' RETIREMENT SYSTEM, Appellant.

545

546

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, and Janelle B. Davis, Deputy Attorney General, for Appellant.

Barbara Lang Betts and Rosemary F. Gauthier for Respondent Wife.

Hufstedler, Miller, Carlson & Beardsley, Robert S. Thompson, John Sobieski, Patricia Phillips and Barry J. MacNaughton for Respondent Husband.

OPINION

BUTLER, J.—The Judges' Retirement System appeals a judgment declaring provisions of Government Code sections 75033 and 75033.5[1] of the Judges' Retirement Law (§§ 75000-75109) inapplicable to the interests of Arthur and Lynn Alarcon in retirement allowances. Those provisions bar or reduce pension benefits to a California sitting judge like Alarcon who accepts appointment to the federal bench. We conclude Alarcon's right to a pension benefit is not barred. The amount, however, is reducible, and we remand to the trial court for further proceedings consistent with this opinion.

---

[1] All statutory references are to the Government Code unless otherwise specified.

The Judges' Retirement Law (§§ 75000-75109) provides for retirement allowances for judges and their surviving spouses. Judges with age and service qualifications may be retired and receive a retirement allowance. Retirement allowances are also payable to judges whose service terminates by means other than death, resignation, recall, impeachment or retirement (§ 75033). Effective March 7, 1973, section 75033 was amended to provide a judge who accepts appointment to the federal bench is not eligible for this deferred retirement.

Effective January 1, 1974, the Legislature added section 75033.5 providing for early retirement. That section again affects judges accepting a federal judgeship by reducing their benefits by the amount of their salary as a federal judge.

With this brief exposition, we recite relevant background.

Alarcon was appointed to the superior court on July 1, 1964, where he served continuously until appointed to the Court of Appeal on June 8, 1978. He remained on the Court of Appeal until November 20, 1979, when he was appointed to the United States Court of Appeals, Ninth Circuit.

Alarcon married Lynn in 1968, separating in 1978. An interlocutory judgment of dissolution was entered May 21, 1979, and a final judgment of dissolution was entered July 2, 1979. The interlocutory judgment reserved jurisdiction to determine the interest of the marital community in benefits under the Judges' Retirement Law and how those benefits should be distributed between Alarcon and Lynn. The Judges' Retirement System participated as a party in the subsequent trial of this issue.

The court denied Alarcon's motion to withdraw his contributions to the retirement fund and Lynn's request for valuation and payment of her interest in the pension benefits. The court then concluded divestment under section 75033 and diminishment under section 75033.5 of pension benefits were unconstitutional in their application to Alarcon. The court ordered the Judges' Retirement System to treat Alarcon as any other judge without regard to his federal appointment and to pay benefits under section 75033.5 without reduction by reason of his federal salary, Lynn to receive her community property interest in the retirement allowance upon Alarcon attaining age 63. ■ ■ ■ ■ This appeal by the Judges' Retirement System ensued.[2] Lynn and Alarcon do not appeal the judgment.

[2]We conclude that we may hear and adjudicate the cause recognizing theoretical possibilities any of us might one day be in Alarcon's position. We follow the rule of necessity we are not disqualified from adjudication because of theoretical personal financial interest if there is no other judge or court available to hear and resolve the issues present. Other California judges have a possible interest. To disqualify one is to disqualify all. (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 537 [178 Cal.Rptr. 568, 636 P.2d 532]; *Olson* v. *Cory* (1982) 134 Cal.App.3d 85, 93 [184 Cal.Rptr. 325]; both cases here are respectively *Olson* v. *Cory I* and *Olson* v. *Cory II.*)

## The System

Effective July 1, 1979 (§ 75005), the Board of Administration of the Public Employees' Retirement System administered and governed the Judges' Retirement Law. The state Controller as used in that law means the Board of Administration with two exceptions not here relevant. ■ ■ ■
■ Upon our inquiry as to the effect of the judgment entered in the lower court on the Board of Administration and our jurisdiction of the appeal, the parties concede the proper party claimant is the Board of Administration, agree we have jurisdiction and ask the appeal be decided on the merits.[3]

## Section 75033

When Alarcon became a superior court judge, section 75033 then provided retirement allowance rights to judges whose services were discontinued by means other than death, resignation, recall, impeachment or retirement. ■ The class of judges whose service was discontinued were those defeated at the polls, those who forfeited or were removed from office and those who accepted an incompatible office such as a federal judgeship. After Alarcon entered a new superior court term on January 3, 1973, section 75033 was amended effective March 7, 1973, to add a federal divestment provision. "A judge who after the effective date of the 1972 amendments to this section leaves his office to accept any lucrative office under the United States within the purview of Section 28, Article IV, of the Constitution shall not be eligible for deferred retirement under this section." ■ A federal judgeship is a "lucrative office" exceeding $500 per annum. (*Crawford* v. *Dunbar* (1877) 52 Cal. 36; *People* v. *Leonard* (1887) 73 Cal. 230 [14 P. 853]; *McCoy* v. *Board of Supervisors* (1941) 18 Cal.2d 193 [114 P.2d 569]; Cal. Const., former art. IV, § 20, now art. VII, § 7.)

■ Upon acceptance of appointment to the federal bench, Alarcon's office as associate justice of the Court of Appeal immediately became vacant. (*People* v. *Garrett* (1925) 72 Cal.App. 452 [237 P. 829].) His service as a judge under section 75033 was discontinued by "means other than

---

[3]We conclude the board is before us sub nomine the Judges' Retirement System (§ 75000) which functions as a component of the Public Employees' Retirement System over which the board acts in an overall supervisory and administrative capacity. (California Judges' Retirement System Second Annual Report and Report of Operations (1981).) The board has appeared through the Judges' Retirement System and is represented by the Attorney General whose statutory duties include representation of the board. Complete relief can be afforded the parties presently before us. (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 753 [135 Cal.Rptr. 345, 557 P.2d 929]; *Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 364 [140 Cal.Rptr. 744]; *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 500 [157 Cal.Rptr. 190]; *Ferraro* v. *Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 44 [162 Cal.Rptr. 238].)

death, resignation, recall, impeachment, or retirement" and terminated as to section 75033.5.

■ The Judges' Retirement System contends the March 7, 1973, federal divestment amendment makes Alarcon ineligible for a deferred retirement allowance. This is said to be mandated by *Olson* v. *Cory I* because Alarcon's appointment to the Court of Appeal on June 8, 1978, started an "unprotected term" which divested his rights to a retirement allowance that may have accrued by virtue of service during a term to which the amendment was not applicable. The contention is without merit.

*Olson* v. *Cory I* considered the effect of 1976 legislation capping to a maximum of 5 percent, the automatic cost of living increases in judges' salaries which had been effective since 1969. The court held judges had a vested right to salary and cost of living increases as effective upon their commencement of service as a judge by appointment or election which could not be impaired or reduced during the term to which appointed or elected, a "protected term" of office. The court also held a judge who completes a protected term during which he was entitled to salary and cost of living increases as then in effect and elects to enter a new term has impliedly agreed to be bound by salary benefits then offered by the state for the new term (the "unprotected term").

The argument of the Judges' Retirement System on applicability of *Olson* v. *Cory I* equates pensions with salaries, a clear case of mistaken identity. The contract for a salary provides for payments during a particular term of office. Judges are employed for specific terms. ■ The state's obligation to pay a specific salary extends to the end of each term of office. There is no promise express or implied the state will continue to pay an existing salary beyond the end of a term. Thus, no contractual rights are impaired if different salary or cost of living differentials are payable during and for a future term.

A pension, however, is different from a salary. A right to pension benefits provided by the state payable upon fulfillment of age, service and other requirements may not be destroyed, once vested, without impairment of the state's contractual obligation. (*Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614]; *In re Marriage of Brown* (1976) 15 Cal.3d 838, 845 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *Dryden* v. *Board of Pension Commrs.* (1972) 6 Cal.2d 575, 579 [59 P.2d 104]; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 855

[179 P.2d 799].)[4] Section 75033 provides a deferred retirement allowance at age 65 equal to 5 percent of the salary payable to the successor in office to the judge whose service terminated multiplied by years of service not to exceed 8 years. ■ Alarcon had at least eight years of service as a judge in the retirement system by January 1, 1973. His right to a deferred retirement allowance under section 75033 was vested prior to March 7, 1973, the effective date of the amendment, and his new six-year term as a superior court judge commenced prior to that date. His pension benefit was vested even though payable at a future date. (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 842.)

Alarcon's appointment in 1978 to the Court of Appeal did not affect his vested right to the deferred retirement allowance. *Olson* v. *Cory I* holds a judge entering upon the unexpired term of a predecessor judge may not claim salary benefits accruing to his predecessor. While Alarcon was not thus sheltered in his appointment to the unexpired term of his predecessor as to salary, it does not follow that his vested right to the deferred retirement allowance suffered a like fate. Pension rights inure in the person, not in the office. Alarcon transferred to a different court within the same retirement system. The coach ticket punched in the 1964 appointment to the superior court continued to be good for passage in the parlor car of the Court of Appeal. His retirement destination was the same.

In coming to this conclusion, we have considered the January 1, 1974, amendment to section 75033 making it inapplicable "to any person who becomes a judge after that date." Section 75002 defines "judge" as meaning "a justice of the Supreme Court or of a court of appeal, or a judge of a superior court or municipal court." While Alarcon's appointment to the Court of Appeal constituted the commencement of a new term as to him (*Olson* v. *Cory I, supra,* at p. 546) in and as to which the January 1, 1974, amendment would be arguably applicable, such applicability would destroy his right to the deferred retirement allowance which was vested before the amendment's effective date. ■ While vested rights to pension benefits may be modified before a retirement to keep a pension system flexible and permit adjustments to accord with changing conditions, such modifications must be reasonable and may not destroy or impair a vested contractual right to a pension. (*Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180 [265 P.2d

---

[4]On November 4, 1980, by initiative, the People amended article III, section 4, of the Constitution to include the phrase, "Laws setting the salaries of judges shall not constitute an obligation of contract pursuant to section 9 of article I or any other provision of law." *Olson* v. *Cory II* held this language in the amendment did not affect vested contract rights of judges to salaries protected by the federal Constitution (*Olson* v. *Cory I*). The initiative need not be further considered here. It speaks to events subsequent to Alarcon's appointment to the federal bench and looks only to *salaries*, not pension benefits of judges.

884]; *Packer* v. *Board of Retirement* (1950) 35 Cal.2d 212, 214 [217 P.2d 660]; *Kern* v. *City of Long Beach, supra,* 29 Cal.2d at pp. 854-855; *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765]; *International Assn. of Firefighters* v. *City of San Diego* (1983) 34 Cal.3d 292, 301 [193 Cal.Rptr. 871, 667 P.2d 675].) ▮ The January 1, 1974, amendment does not apply to Alarcon. His vested rights and service as a judge under the Judges' Retirement Law continued upon and after his appointment to the Court of Appeal.

Alarcon is entitled to elect the options available to him under section 75033 as of the date, November 20, 1979, he assumed the federal bench. The March 7, 1973, federal divestment amendment to section 75033 does not apply to him.

### Section 75033.5—Reduction in Benefits

We now determine Alarcon's entitlement to benefits under section 75033.5, effective January 1, 1974, providing for early retirement and deferred payment of benefits to judges so retired. Alarcon became entitled to eligibility for these early retirement benefits by reason of his service in his new superior court term commencing January 3, 1973, before the effective date of section 75033.5.[5]

▮ Entitlement to section 75033.5 benefits, however, necessarily requires fulfillment of the conditions attendant upon the benefits. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 817-818 [135 Cal.Rptr. 386, 557 P.2d 970].) A condition of the section 75033.5 benefit is its diminishment in the amount of salary or retirement attributable to Alarcon's federal judgeship. As section 75033.5 became effective after the commencement of his new term, the diminishment condition applies to him. While a legislative retirement beneficence conferred *during* a judge's term of office will be protected in a subsequent term (*Olson* v. *Cory I, supra,* 27 Cal.3d at p. 546), the beneficence so protected continues to carry its burdens. ▮ However, Alarcon contends the setoff of the federal salary against the deferred retirement allowance otherwise payable by reason of his state court service is invalid as an arbitrary, unreasonable classification denying him the equal protection of the law. We disagree. The classification does not deny Alarcon equal protection of the law.

---

[5]His retirement allowance under section 75033.5 (without regard to any reduction by reason of his federal salary) is computed by his years and fraction of years of service (July 1, 1964, through Nov. 20, 1979) multiplied by 3.75 and equals 57.705 percent of the compensation payable to his successor justice as compared to the maximum benefit of 40 percent computable under section 75033. Other things being equal, Alarcon and Lynn (to the extent of her interest in the pension) understandably prefer the larger retirement allowance under section 75033.5.

■ The test we use in our review of this issue is whether the distinctions drawn by the statute bear some rational relationship to a conceivable state purpose. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10].) The rationale underlying this test is said to manifest restraint by the judiciary in relation to the discretionary act of a coequal branch of government. We presume the statute is constitutional and the party challenging the classification has the burden of proving it unreasonable or irrational. (*McCourtney* v. *Cory* (1981) 123 Cal.App.3d 431 [176 Cal.Rptr. 639].)[6]

■ We conclude the distinction between judges eligible for early retirement who accept a federal judgeship and those who do not is valid as the distinction bears ". . . some rational relationship to a conceivable legitimate state purpose." (*Westbrook* v. *Mihaly, supra,* 2 Cal.3d 765, 784.) We reach this conclusion based on our inquiry into the relationship between the classification and the legislative goals against a background of other legislative, administrative and judicial directives which govern the rights of other similarly situated persons. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212].)

As part of its continuing responsibility, the Legislature has had fiscal concerns with the self-sufficiency of the retirement fund. (Stats. 1978, ch. 384, §§ 3-5, p. 1230.) From its inception, the Judges' Retirement Law, while providing for retirement allowances, has included provisions reducing such allowances upon the happening of various events.

---

[6]We reject the "strict scrutiny" test applicable to statutes with a suspect classification or touching a fundamental interest. (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 421 P.2d 487], vacated on other grounds in *Mihaly* v. *Westbrook* (1971) 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224]; *Serrano* v. *Priest, supra,* 18 Cal.3d at pp. 760-765.)

The reduction in retirement allowances measured by federal salary payable to a judge eligible for early retirement benefits does not create a "suspect classification" such as race (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 951 [92 Cal.Rptr. 309, 479 P.2d 669]), sex (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529]), lineage or national origin (*Sei Fujii* v. *State of California* (1952) 38 Cal.2d 718, 730 [242 P.2d 617], and poverty (*In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999].)

While employment coupled with a *suspect classification* has been said to be a protectable fundamental interest (*Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1, 16; *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]), the reduction here in the retirement allowance is not so coupled and does not touch a fundamental interest such as the constitutional right to marry (*Loving* v. *Virginia* (1967) 388 U.S. 1 [18 L.Ed.2d 1010, 87 S.Ct. 1817]), to travel from one state to another (*United States* v. *Guest* (1966) 383 U.S. 745, 757-758 [16 L.Ed.2d 239, 248-249, 86 S.Ct. 1170]), to privacy (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]), to be eligible for welfare without a one-year residency (*Shapiro* v. *Thompson* (1968) 394 U.S. 618, 631 [22 L.Ed.2d 600, 613, 89 S.Ct. 1322]), to vote (*Harper* v. *Virginia Bd. of Elections* (1966) 383 U.S. 663 [16 L.Ed.2d 169, 86 S.Ct. 1079]) and to procreate children (*Skinner* v. *Oklahoma* (1942) 316 U.S. 535, 541 [86 L.Ed. 1655, 1660, 62 S.Ct. 1110].)

When Alarcon moved to the federal bench, section 75080[7] extinguished retirement allowances to a judge retired for disability who, while so retired and while less than 70 years of age, engaged in the practice of law or other gainful occupation. That section further provided the benefits payable to a judge retired for age and service or for disability were reducible by the amount of salary or compensation paid such a retired judge as the incumbent of any public office.

A retired judge appointed by the Supreme Court or Court of Appeal to act as a master or referee can be paid in addition to his retirement allowance the difference between his retirement allowance and the compensation of a judge of the court from which he retired. (§ 75083.) A retired judge assigned to sit in a court is compensated at a rate equal to 92 percent of the compensation of a judge of the court to which he is assigned. If that compensation is greater than his retirement allowance, the retirement allowance is suspended so long as he receives the compensation. If it be less, then the retirement allowance is continued to be paid but only in an amount equal to the difference between the compensation he receives and the retirement allowance to which he is otherwise entitled. (§ 68543.5.)

Contrary to Alarcon's contentions, the Judges' Retirement Law diminishes retirement allowances by the amount of compensation received from other employment in various circumstances.[8] The class in which Alarcon claims he finds himself is in reality a subgrouping within a larger class of judges entitled to retirement allowances, the amounts of which are diminishable through the pursuit of judicial assignments, the practice of law and the holding of a public office. We find no reported cases challenging these diminishments. While the passage of time and apparent acquiescence does not enshrine these concepts, it is some indication of their general acceptance as to fairness and rationality.

Nothing in the record is suggestive these classifications do not bear a rational relation to a constitutionally permissible objective, the providing of

---

[7]Significant amendments to this section were made by statutes 1981, chapter 585, section 1, pages 2251-2252; statutes 1982, chapter 1639, section 3, pages 1237-1238; statutes 1982, chapter 1640, section 2.5, pages 1241-1242. The amended section continues to reduce retirement allowances in the amount of salary or compensation received by a retired judge on assignment to a court after a disability retirement, and a judge retired for disability who is less than 70 years of age may without loss or reduction in his retirement allowance engage in the practice of law or any other gainful occupation other than a public office so long as his compensation when combined with his retirement allowance does not exceed 75 percent of the salary payable to the successor judge holding his office. These amendments are operative until January 1, 1987.

[8]Social Security benefits are likewise reducible by reason of income from other sources. (42 U.S.C. §§ 402, 403, 415, 428.)

a retirement plan for judges which takes into account amounts received by them from the state for judicial purposes or by reason of the holding of a public office or the emoluments of a federal judgeship. The retirement of the judge is comforted by income generated through the retirement allowances or gainful employment. It is the judge's election as to the source. We find the section 75033.5 classification is reasonable and consistent with the aims of the retirement law.

## ELECTION OF BENEFITS

The court denied Alarcon's motion to withdraw contributions to the Judges' Retirement Fund and Lynn's request she be awarded the actuarial value of her community interest in Alarcon's retirement benefits. The court ordered Alarcon to elect a section 75033.5 retirement and directed the Judges' Retirement System to allow such retirement and to accord Alarcon retirement benefits without regard to his service on the federal bench, i.e., upon attainment of age 63, to pay Lynn her community interest (33.815 percent) in the retirement allowance as paid from time to time by the system and the balance to Alarcon. Neither Lynn nor Alarcon appealed the judgment.

On the issues raised by the Judges' Retirement System in its appeal, we have concluded Alarcon is eligible for a section 75033 retirement and, though eligible under section 75033.5, his retirement allowance would be reduced to zero by reason of his federal salary. ▮ Lynn argues in her brief, should that be our conclusion, Alarcon's acceptance of the federal appointment and resultant elimination of the section 75033.5 retirement does not impair her community property interest in the benefits otherwise attributable to Alarcon under that section which, as we have seen, is 57.705 percent of the salary payable to his successor as compared to the 40 percent maximum under section 75033. Restated, Lynn claims Alarcon must reimburse the community for the loss of section 75033.5 benefits occasioned by his unilateral decision to accept appointment to the federal bench.

This argument was advanced by Lynn in the trial court in her request for valuation and payment of her community interest in Alarcon's retirement benefits. The court rejected the argument and denied her request. She did not appeal the judgment. Nevertheless, as we remand for further proceedings, we consider her reimbursement contentions. ▮ A spouse may not defeat the interest of a wife in her community share of retirement benefits upon dissolution of marriage where the covered spouse is eligible to retire and elects to continue working. (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96]; *Bensing* v. *Bensing* (1972) 25 Cal.App.3d 889 [102 Cal.Rptr. 255], disapproved on other grounds in *In*

*re Marriage of Brown, supra,* 15 Cal.3d 838.) Alarcon's right to the section 75033.5 benefits was vested when he went on the federal bench even though payments (subject to the diminishment consequences) are postponed to the attainment of age 63. (*In re Marriage of Brown, supra,* 15 Cal.3d at pp. 846-847; *In re Marriage of Skaden* (1977) 19 Cal.3d 679, 687-688 [139 Cal.Rptr. 615, 566 P.2d 249].)

While Alarcon's federal appointment affected the parties' community right to receive retirement benefits from the retirement fund, his election did not defeat the community interest in pension benefits. (*In re Marriage of Brown, supra,* 15 Cal.3d at pp. 849-850.) That interest as with other community property intangibles is susceptible to valuation despite difficulties in appraisal.[9]

In concluding the community interest in section 75033.5 retirement benefits is not defeated by Alarcon's federal appointment, we do not commit the court on remand to a valuation and division of that interest with possible reimbursement required of Alarcon. The court will consider options available to Alarcon under the Judges' Retirement Law and community property interests in those options such as withdrawal of contributions and retirement election under both sections with resultant consequences to the parties to include the uncertainties of maturation of the benefits, actuarial valuations of the right to future income, division of the payments upon maturation and retention of jurisdiction to effectuate a future disposition. "We believe that in cases of this kind the matter of the proper division of rights to termination benefits as marital property should be left to the sound discretion of the trial court, exercised in light of the particular circumstances of the case. We anticipate that in many instances the parties, seeking to achieve a final determination at the time of dissolution, may be able to reach some reasonable

---

[9]At our request following oral argument, the parties briefed the effect of Alarcon's death on payments to Lynn of her share of retirement allowances upon election to retire under either section 75033 or section 75033.5. Under section 75104, Alarcon's failure to survive to age 65 (§ 75033) or 63 (§ 75033.5), and his death thereafter, cuts off Lynn's rights as an ex-spouse to payments under the conditions provided in sections 75070 through 75072. (*Waite* v. *Waite* (1972) 6 Cal.3d 461, p. 473, fn. 8 [99 Cal.Rptr. 325, 492 P.2d 13], disapproved on other grounds in *In re Marriage of Brown, supra,* 15 Cal.3d 838; cf. *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667 [143 Cal.Rptr. 94].)

We need not determine on this appeal whether the cut off of benefits to Lynn upon the fulfillment of these conditions is a taking of her community property interest without due process of law. As neither Lynn nor Alarcon appealed that decision, the issue is not before us. We note survival is a proper condition for payment of benefits. It will not defeat the community's otherwise vested right to retirement funds; it is simply a factor considered by the court in valuing future benefits. (See *In re Marriage of Brown, supra,* 15 Cal.3d at pp. 846-847; *In re Marriage of Skaden, supra,* 19 Cal.3d at pp. 687-688.) In ordering Alarcon's retirement under section 75033.5 and payment to Lynn of her share of the allowance, the court considered survival as one of the factors affecting its decision and will do so again on remand.

agreement and settlement relative to the present disposition of the rights in question. In cases where this is not possible the court will of necessity be called upon to make an assessment of the relative feasibility of present valuation by actuarial means [citation] before choosing between that approach and the expedient of reserving jurisdiction so as to determine value and effectuate a disposition of the property at some time in the future. We apprehend that depending on the evidence before it, a myriad of considerations may have a bearing on the trial court's exercise of discretion in resolving the problem." (*In re Marriage of Skaden, supra,* 19 Cal.3d at pp. 688-689.)

*Disposition*

The judgment is affirmed in part and reversed in part. The cause is remanded to the superior court for further proceedings consistent with this opinion. Each party shall bear their own costs of appeal.

Staniforth, Acting P. J., and Wiener, J., concurred.