**Robert J. TIMLIN, Plaintiff,**

**v.**

**Susan L. MYERS, Chief Legislative Services Division, California Public Employees' Retirement System, et al., Defendants.**

**No. CV 95–0177 JCC (Kx).**

United States District Court,
C.D. California.

July 21, 1997.

Gilbert Gaynor, Santa Barbara, CA, for Plaintiff.

Daniel Lungren, Attorney General, Daniel G. Stone, Deputy Attorney General, Sacramento, CA, for Defendants.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COUGHENOUR, Chief Judge.

This matter comes before the Court on plaintiff's motion for summary judgment. The parties do not request oral argument. Having reviewed the pleadings, memoranda, exhibits and other relevant documents on file, the Court now finds and concludes as follows:

## I. BACKGROUND

Plaintiff Robert Timlin served as a member of the California judiciary from March 1, 1976 until October 17, 1994, when he retired from his position in order to accept an appointment to the federal bench. During his tenure as a state judge, plaintiff contributed a portion of his salary to the Judges' Retirement System (JRS). When he retired, he elected deferred retirement, pursuant to Cal. Gov't Code § 75033.5.[1] Under this plan, in March 1996 plaintiff became eligible to receive benefits of approximately 70% of the salary of an Associate Justice of the California Court of Appeal.

However, section 75033.5 provides:

A judge who leaves his or her office to accept any lucrative office under the United States within the purview of Section 7 of Article VII of the Constitution shall have any benefits receivable hereunder reduced by the amount of any salary or retirement benefits he or she receives by virtue of his or her service in that office.

A federal judgeship is a lucrative office under the United States. *In re Marriage of Alarcon*, 149 Cal.App.3d 544, 551, 196 Cal.Rptr. 887 (1983). The parties do not dispute that, given federal judicial salary and benefits schedules, the effect of section 75033.5, if

---

1. Plaintiff also had the option to elect a refund of his contributions to the JRS. Cal. Gov't Code § 75104(a). He elected deferred retirement instead.

enforced, is to eliminate plaintiff's benefits under the JRS.

Plaintiff filed suit against Susan Myers, Chief, Legislative Services Division of the California Public Employees Retirement System and Michael Priebe, Manager, California Judges' Retirement System, both in their official capacities. He alleged that the defendants, by enforcing section 75033.5, are denying him the rights, privileges, and immunities guaranteed by the Equal Protection Clause of the Fourteenth Amendment, the Supremacy Clause, and 4 U.S.C. § 111.[2]

## II. ANALYSIS

The parties agree that there are no genuine issues of material fact and that the Court may rule as a matter of law. See Fed. R.Civ.P. 56(c). The Court may thus determine the constitutionality of the last paragraph of Cal. Gov't Code § 75033.5 on the current record.

Plaintiff mounts a facial and as applied challenge to the statute. A facial challenge may be sustained only when there are no conceivable circumstances under which the provision at issue could be constitutionally applied. See United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). If the distinction between retired state judges who are federal employees and other retired state judges is impermissible, it is difficult to imagine a scenario in which the statute could be constitutionally applied. The parties have not, however, sufficiently explored the propriety of a facial challenge in their briefing. Accordingly, the Court will limit its analysis to plaintiff's as applied challenge.[3]

## A. Equal Protection Claim.

Plaintiff claims that the last paragraph of section 75033.5 violates the Equal Protection Clause of the Constitution. U.S. Const.

amend. XIV, § 1. He argues that it is unconstitutional because it classifies state court judges who leave their employment to accept positions with the federal government differently than state court judges who leave their employment to accept other types of positions. This classification, he contends, has no rational relationship to the objects of the legislation.

### 1. Voluntary Acceptance of Terms of Retirement.

■ As an initial matter, defendants argue that plaintiff may not assert an equal protection challenge because he voluntarily accepted the terms of the JRS retirement. Defendants also argue that he may not raise an equal protection challenge because he voluntarily left his office to accept his position on the federal bench knowing that as a consequence he would be unable to collect deferred retirement benefits, and because he voluntarily elected to forgo a refund of his JRS contribution and to instead apply for deferred retirement.[4]

These arguments fail. A state may not condition employment on the waiver of a constitutional right. See Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) (holding that a state may not deny employment based on exercise of constitutional right); Western & Southern Life Ins. Co. v. State Board of Equalization of California, 451 U.S. 648, 652, 657, 101 S.Ct. 2070, 2074, 2077, 68 L.Ed.2d 514 (1981) (stating that a state may not impose an unconstitutional condition on the grant of a privilege in a case brought by an insurance company challenging on equal protection grounds a tax that it had paid for many years as a condition of doing business in California). Thus, the Court may not conclude that plaintiff waived his right to equal protection when he accepted his employment, and when

---

**2.** The Court previously dismissed plaintiff's section 111 claim under Fed.R.Civ.P. 12(b)(6).

**3.** This is also the preferred course of adjudication for federal courts because it allows the courts to avoid making unnecessarily broad constitutional judgments. City of Cleburne Texas v. Cleburne Living Center, 473 U.S. 432, 447, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985).

**4.** If plaintiff had elected to obtain a refund of his contributions to the JRS, he would have under Cal. Gov't Code § 75104 received the historical sum of his contributions, but no interest on that amount.

he sought to obtain the deferred retirement benefits due him as a result of his service to the state judiciary.[5]

### 2. *Equal Protection Analysis.*

■ The classification at issue does not involve a suspect class. "The fundamental query in an equal protection claim that does not involve a suspect class is whether '[the] classification [is] reasonable, not arbitrary, and [rests] upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Komarenko v. Immigration and Naturalization Service,* 35 F.3d 432, 435 n. 1 (9th Cir.1994) (quoting *Stanton v. Stanton,* 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975)).

The initial step in equal protection analysis is identifying the legitimate state interests. California asserts that two purposes are served by prohibiting federal employees from obtaining JRS retirement benefits.[6] First, it is intended to protect the JRS retirement fund in order to assure that retired state judges receive comfortable retirement incomes without overburdening the state general fund. Second, it is intended to help attract and to retain the services of well qualified persons in the state judiciary and in other state and local government offices. There is no dispute that these are legitimate goals.

The next step in equal protection analysis is determining whether these goals are rationally served through the classification drawn by the legislature.

### 3. *Conservation of JRS Retirement Fund.*

■ With regard to California's desire to conserve the JRS retirement fund, plaintiff argues that the distinction made between retired state judges who obtain federal employment, and those who enter private practice or obtain state or local government employment, does not rationally serve the state purpose. If the state really wanted to conserve the JRS retirement fund by not paying benefits to those who obtain alternative sources of income, plaintiff asserts that the state would deny benefits to all retired state judges who have such alternative income, not just federal employees.

Defendants contend, however, that the denial of benefits to federal employees is rationally related to conserving the resources of the JRS because it does reduce the amount of money that is paid out of the system.[7] Defendants rely on *Williamson v. Lee Optical of Okl.,* 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955), which explained that a legislature may address a problem one step at a time, and need not address all phases of the problem at once. They argue that it was thus permissible for the legislature to choose to protect the JRS at the expense of federal employees, but not

**5.** Moreover, when plaintiff entered the state judiciary in 1976 the statute did not single out federal employees for different treatment than state employees. Instead, prior to 1982 the statute reduced the retirement allowance for a person holding "any public office." In addition, while plaintiff's acceptance of employment was voluntary, his entry into the JRS was not. The controlling statute states that the "Controller *shall* at the end of each month ... deduct 8 percent from the monthly salary of each Justice of the Supreme Court and of the courts of appeal and of the portion paid by the state of the monthly salary of each judge of the superior court." Cal. Gov't Code § 75102 (emphasis added).

**6.** California also asserts that the decision in the present case should follow that in *Alarcon,* in which the California Court of Appeal held that section 75033.5 did not violate the Equal Protection clause as applied to a retired state judge

who became a federal Judge. *Alarcon,* 149 Cal. App.3d at 556–57, 196 Cal.Rptr. 887. Even if the Court found the reasoning of *Alarcon* to be persuasive, the holding in that case would not apply here. At the time of the decision California did not single out federal judges for unique treatment. At that time the retirement system reduced the amounts available to various classes of retirees when they pursued judicial assignments, the practice of law, or public office. *Id.* at 556, 196 Cal.Rptr. 887. Except for the current reduction of deferred retirement for federal employees, most of those limitations have now been eliminated. Moreover, *Alarcon* did not address the impact of the intergovernmental immunity doctrine, which plays a large role in the Court's analysis of the present case.

**7.** The JRS currently has an unfunded liability of over $1.25 billion.

others. Put differently, defendants contend that even if the goal would be better accomplished by denying benefits to all retired state judges who obtain alternative sources of income, under the current regime some money is saved.

Defendants, however, focus solely on the effect of the statute, rather than on how that effect is achieved. It is not the ultimate savings of some money that must be scrutinized, but rather the distinction made between federal employees and others to achieve that savings that must be examined. The distinction must be rationally related to the state objective. *Zobel v. Williams,* 457 U.S. 55, 61, 102 S.Ct. 2309, 2313, 72 L.Ed.2d 672 (1982). In that light, the state's legitimate interest in conserving funds is not rationally related to singling out federal employees to forgo benefits, but not others.

This situation is similar to that in *Williams v. Vermont,* 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985). There, a challenge was made to a Vermont use tax that was collected when a vehicle was registered in Vermont. *Id.* at 15, 105 S.Ct. at 2467–68. The use tax was waived for those who purchased a vehicle in Vermont and paid a sales tax at the time of purchase. *Id.* The use tax was also waived for those who while residing in Vermont purchased a vehicle in another state and paid a sales tax in that state at the time of purchase. *Id.*[8] The use tax was not waived, however, for those who while residing in another state purchased a vehicle in that state and paid a sales tax in that state at the time of purchase. *Id.*

The result of the statute was that persons who were Vermont residents at the time they purchased a vehicle and paid a sales tax to another state did not have to pay the use tax when they registered the vehicle in Vermont, while persons who were not Vermont residents at the time they purchased a vehicle and paid a sales tax to another state did have to pay the use tax when they registered the vehicle in Vermont. The Court examined whether this distinction rationally served the purposes of the use tax.

The purposes of the use tax were to "improve and maintain the state and interstate highway systems, [and] to pay the principal and interest on bonds issued for the improvement and maintenance of those systems . . . ." *Id.* at 18, 105 S.Ct. at 2469. The Court found that the distinction made by Vermont with regard to payment of the use tax did not rationally serve these legitimate purposes. The Court explained:

> In the present case, residence at the time of purchase is a wholly arbitrary basis on which to distinguish among present Vermont registrants—at least among those who used their cars elsewhere before coming to Vermont. Having registered a car in Vermont they are similarly situated for all relevant purposes. Each is a Vermont resident, using a car in Vermont, with an equal obligation to pay for the maintenance and improvement of Vermont's roads. The purposes of the statute would be identically served, and with an identical burden, by taxing each. The distinction between them bears no relation to the statutory purpose [of maintaining roads].

*Id.* at 23–24, 105 S.Ct. at 2472.

Similarly, retired state court judges eligible for deferred retirement who leave their positions to accept employment in the federal government are for all relevant purposes similarly situated to those eligible for deferred retirement who leave their positions to accept employment in the private sector or in state or local government. All such persons contributed to the JRS, vested in the system, left the state judiciary, and became eligible for deferred retirement benefits. The purpose of the statute to conserve the JRS retirement fund would be identically served, with an identical burden, by withholding those benefits from all retired state court judges to the extent that they obtained income from another source. The source of such income does not, however, bear any rational relationship to the goal of reducing the amount of deferred retirement benefits paid out by the JRS fund. Thus, the distinction drawn by the state does not have a

---

8. Although not relevant to the present analysis, this credit for out-of-state purchases was only provided if the other state gave a similar credit for vehicles purchased in Vermont. *Id.*

rational relationship to the legitimate purpose of conserving the JRS fund.

### 4. *Retaining Qualified State Employees.*

■ Defendants also claim that the prohibition against the receipt of deferred retirement by federal employees serves California's interest in retaining the services of well qualified state judges and other state and local government employees. This is because under the statute retired state judges may return to temporary service as state court judges or accept non-judicial positions in state and local government without suffering any reduction in deferred retirement benefits.

The treatment of retirees who continue to work as temporary state trial judges is particularly illuminating. A retired judge may accept an assignment to sit in a state trial court. The judge is paid approximately 92% of the compensation paid to a judge on active duty "without loss or interruption of retirement benefits...." Cal. Gov't Code §§ 68543.5, 68543.7. Thus, a retired state judge who accepts an assignment to sit in a state trial court receives nearly full compensation for the service, and also continues to receive full deferred retirement benefits.

Plaintiff mounts two types of challenges to the state's proffered interest in retaining high quality state judges and state and local officials. First, he argues that the purpose is not rationally served by the distinction made between retirees who work as federal employees and all other retirees. Second, he argues that even if there is a rational relationship, the state is prohibited from employing a means that discriminates against federal employees in order to achieve the legitimate purpose of maintaining a well qualified state and local government work force.

### a. *Rational Relationship.*

As to the rational relationship, plaintiff concedes that the distinction between the treatment of retired state judges who become federal employees and those who accept temporary assignments on the state bench or work in state or local government, does to some extent further the state's interest in retaining qualified judges and qualified

state and local government employees. Plaintiff argues, however, that the rationality of such a distinction is destroyed because the statute also allows retired state judges to accept private employment without suffering any decrease in deferred retirement benefits.

Plaintiff also argues that the rationality of the distinction is lacking because under section 75033.5 a retired state judge may work as a federal employee without having deferred retirement benefits reduced so long as the judge does not leave the state court to immediately accept federal employment. The statute supports this view. It reduces deferred retirement benefits for "[a] judge who leaves his or her office to accept any lucrative office under the United States...." This language may be interpreted to mean that a state judge could leave the state judiciary, work in private practice for a time, and then accept a position on the federal bench without suffering any reduction in deferred retirement benefits.

The arguments put forward by plaintiff are somewhat difficult to resolve. The distinction between retired state judges who enter federal employment and those who serve the state in some capacity is rationally related to the state's interest in retaining the services of well qualified employees. However, the distinction between retired state judges who leave the state judiciary to accept federal employment and those who enter private employment, or who enter private employment and subsequently accept federal employment, bears no relationship to the state's desire to secure the services of well qualified employees.

It is important to note that defendants rest their case on the effectiveness of economic incentives. Indeed, the state acknowledges in its brief that it has increased the amount that retired state judges can obtain in temporary assignments to state trial courts in order "to compete in a market which offers, inter alia, an increasing number of lucrative jobs in private mediation and arbitration." Yet the state continues to irrationally allow its purpose with regard to economic incentives to be substantially undermined by allowing retired state judges to enter private practice without any negative deferred re-

tirement consequences. In addition, the state offers no rational reason to limit the prohibition against receiving an alternative source of income and deferred retirement benefits to federal employees, but not private employees. As a consequence, the court must conclude that the distinction drawn between federal employees on one hand, and private and state and local government employees on the other hand, cannot be said to rationally serve the purpose of retaining qualified state workers.[9]

### b. Legitimacy of Means.

▮ Plaintiff argues that even if the means rationally serve the purpose, the means. impermissibly discriminate against the federal government. Plaintiff relies on *North Dakota v. United States*, 495 U.S. 423, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990). *North Dakota* involved a Supremacy Clause challenge to the state's regulation of liquor imported onto federal military bases. *Id.* at 434–39, 110 S.Ct. at 1994–97. The Court explained that a state law may run afoul of the Supremacy Clause if it discriminates against the federal government and those with whom it deals. *Id.* at 435, 110 S.Ct. at 1994–95. The prohibition against such· discrimination is referred to as the intergovernmental immunity doctrine. *See id.* at 439, 110 S.Ct. at 1997.

▮ Plaintiff asserts that equal protection analysis requires the Court to examine the means employed by the state to determine if they violate the intergovernmental immunity doctrine, just as equal protection analysis requires courts to scrutinize the means employed by a state to determine if they improperly discriminate against out-of-state businesses. See *Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869, 880, 105 S.Ct. 1676, 1682–83, 84 L.Ed.2d 751 (1985) (state's goal of bringing in new business is legitimate, but cannot be accomplished by discriminating against foreign corporations).

The Court agrees. Defendants cannot violate the Constitution in order to achieve what would otherwise be a legitimate goal.

The intergovernmental immunity doctrine is typically applied to state laws that impact the federal government, or that impact those that contract with the federal government. This is because "a regulation imposed on one who deals with the Government has as much potential to obstruct government function as a regulation imposed on the government itself." *North Dakota,* 495 U.S. at 438, 110 S.Ct. at 1996. The doctrine has also been applied to limitations that impact former employees of the federal government. *Davis v. Michigan Department of the Treasury,* 489 U.S. 803, 806–07, 109 S.Ct. 1500, 1503, 103 L.Ed.2d 891 (1989) (examining whether a state tax on federal employee retirement benefits violated the doctrine). Thus, the doctrine must also apply to rules that impact current employees of the federal government like plaintiff.

There is some question, however, as to whether the doctrine of intergovernmental immunity can be applied in the present case, which does not involve a direct tax of a federal employee. Plaintiff relies on *North Dakota.* This case supports application of the doctrine to regulations that are not direct taxes. *North Dakota* scrutinized the ability of North Dakota to regulate the importation by out-of-state shippers of alcohol onto federal military bases. *North Dakota,* 495 U.S. at 426, 110 S.Ct. at 1990. The state did not impose a tax. But it did require these importers to file monthly· reports itemizing the liquor they imported, and to affix labels to each bottle of liquor sold to a federal enclave indicating that it was not for use outside of the enclave. *Id.* Although the Court concluded that the regulation was not discriminatory, it did require that the regulation "be one that is imposed on some basis unrelated to the object's status as a Government contrac-

---

**9.** Defendants argue that California may rationally distinguish between federal employees and private employees to avoid the additional financial burden on taxpayers that results when a retired state judge receiving deferred retirement accepts federal employment, as opposed to when such a judge accepts private employment. According to defendant's theory, the salary received by a fed-

eral employee imposes an additional burden on the taxpayers, while the compensation received by a private employee does not impose such a burden. Although this analysis is factually accurate, the state's reliance on it is misplaced. The additional burden imposed by federal employment is the concern of the federal government, not the state government.

tor or supplier, that is, that it be imposed equally on other similarly situated constituents of the State." *Id.* at 438, 110 S.Ct. at 1996.

The Court cannot distinguish the application of the intergovernmental immunity doctrine to the regulations at issue in *North Dakota* from the application of the doctrine to the regulation of federal employees in the present case. In both instances the state is seeking to place a burden on an entity that is contracting with the federal government based solely on that entity's affiliation with the federal government.

In *North Dakota* the regulation was permissible because it did not disfavor federal government importers as compared to other importers. Instead, it actually favored federal government importers by allowing them to purchase liquor outside of the standard, state regulated distribution channels. *Id.* at 439, 110 S.Ct. at 1997. In the present case, however, the deferred retirement statute does disfavor the federal government by eliminating retirement benefits that would be due to federal employees but for their status as federal employees.[10]

The discriminatory nature of section 75033.5 is also demonstrated by *Davis*. In *Davis* the Court applied 4 U.S.C. § 111, which is a codification of the intergovernmental tax immunity doctrine. *Davis*, 489 U.S. at 813, 109 S.Ct. at 1506–07. This is, in turn, a subset of the broader doctrine of intergovernmental immunity applied in *North Dakota*. Both find their genesis in *McCulloch v. Maryland*, 4 Wheat. 316, 425–437, 4 L.Ed. 579 (1819). See *North Dakota*, 495 U.S. at 437–38, 110 S.Ct. at 1996 (citing *McCulloch* for the proposition that the intergovernmen-

tal immunity doctrine is derived from the principal that "states may not directly obstruct the activity of the federal government"); *Davis*, 489 U.S. at 812, 109 S.Ct. at 1506 (indicating that since *McCulloch* the intergovernmental tax immunity doctrine has barred taxes that discriminate against the federal government or those with whom it deals).

In *Davis* the Court examined a Michigan law that applied state income tax to the pensions of federal retirees, but not state retirees. To impose such a tax, which places a heavier burden on those who deal with the federal government than those who deal with the state, the Court required the state to establish that the inconsistent treatment was "directly related to, and justified by, 'significant differences between the two classes.'" *Id.* at 816, 109 S.Ct. at 1508 (quoting *Phillips Chemical Co. v. Dumas Independent School Dist.*, 361 U.S. 376, 383–85, 80 S.Ct. 474, 479–80, 4 L.Ed.2d 384 (1960)).

Applying this standard, the Court rejected Michigan's asserted interest in hiring and retaining qualified civil servants through the inducement of a tax exemption for retirement benefits. *Id.* It explained that while the state had a rational interest in discriminating between state and federal retirees in order to attract good employees, this interest did not demonstrate any significant differences between the two classes. *Id.* at 816, 109 S.Ct. at 1508. Thus, it found that Michigan's tax violated the principles of intergovernmental tax immunity by "favoring retired state and local government employees over retired federal employees." *Id.* at 817, 109 S.Ct. at 1509.

---

**10.** Defendants argue that the present case is distinguishable from *North Dakota*, because the statute at issue does not directly regulate federal employees. This distinction, however, does not affect the analysis. In both cases the state is negatively impacting the government contractor or employee based on their dealings with the federal government. In *Raskin v. Moran*, 684 F.2d 472, 475–77 (7th Cir.1982), in which the court examined a Wisconsin statute that reduced the amount of pay certain retired state judges received for serving as "reserve" judges, by the amount of any Social Security benefits received by those judges, the court noted that even though the state statute did not directly prevent or impede plaintiff's receipt of Social Security benefits, it effectively deprived them of those federal benefits by reducing their salaries in an amount precisely equal to the federal benefits. *Id.* at 477. Although the current action does not concern a preemption challenge as was the case *Raskin*, it is instructive. Here, the state reduces the amount of deferred retirement received by federal employees by an amount precisely equal to the amount of salary they receive from the federal government. This effectively deprives plaintiff of the full benefit of his federal salary.

Similarly, California has a rational interest in seeking to discriminate between federal and state employees who are retired state judges in order to retain well qualified workers, but there is no significant difference between the groups, other than their status as employees of the federal government as opposed to employees of state or local government. By favoring state and local government employees over federal employees the state is violating the principles of intergovernmental immunity. *See id.*

In sum, the intergovernmental immunity doctrine protects employees of the federal government, and prohibits regulations that unduly burden such employees. Applying the doctrine to the present case, the Court concludes that the last paragraph of section 75033.5 substantially and improperly reduces the income received by certain retired state court judges solely because of their status as federal employees. As a result, the provision is an illegitimate means that cannot be used to serve the state's otherwise legitimate purpose of retaining qualified state and local government employees.

**B. Intergovernmental Immunity Doctrine Claim.**

The Court need not reach plaintiff's intergovernmental immunity doctrine claim, which he raises as an independent claim under the Supremacy Clause. However, as indicated in the equal protection analysis the denial of deferred retirement benefits to federal employees based on their status as federal employees violates the doctrine.

### III. CONCLUSION

Plaintiff's motion for summary judgment is GRANTED. Defendants are hereby enjoined from enforcing the last paragraph of Cal. Gov't Code § 75033.5 to reduce the amount of deferred retirement benefits due to plaintiff as a result of his status as a federal judge. The Clerk of the Court is directed to enter final judgment accordingly.