[No. S166221. Feb. 22, 2010.]

In re the Marriage of GORDON ALBERT SONNE and THERESSA LYNN SONNE.
GORDON ALBERT SONNE, Appellant, v.
THERESSA LYNN SONNE, Appellant.

## Counsel

Tarkington, O'Neill, Barrack & Chong and Robert A. Roth for Appellant Gordon Albert Sonne.

Barbara A. DiFranza as Amicus Curiae on behalf of Appellant Gordon Albert Sonne.

Law Offices of Bernard N. Wolf, Bernard N. Wolf; Law Office of Billie C. French and Billie C. French for Appellant Theressa Lynn Sonne.

**OPINION**

**BAXTER, J.**—Gordon Albert Sonne (Husband), the former Sheriff-Coroner-Public Administrator of Monterey County, is a member of the California Public Employees' Retirement System (CalPERS). Members of CalPERS, once vested, participate in a defined benefit retirement plan, which supplies a monthly retirement allowance under a formula comprising factors such as final compensation, service credit (i.e., the credited years of employment), and a per-service-year multiplier. The retirement allowance consists of an *annuity* (which is funded by member contributions deducted from the member's paycheck and interest thereon) and a *pension* (which is funded by employer contributions and which must be sufficient, when added to the annuity, to satisfy the amount specified in the benefit formula). (Gov. Code, §§ 21350, 21362.2, subd. (a), 21363.1, subd. (a).)

In 1995, Husband transferred to his former wife, Dalia, 8.677 years of service credit, which represented her one-half interest in the service credit Husband had earned during their marriage. Dalia subsequently exercised her right to a refund of the accumulated contributions in the account, thereby permanently waiving her rights to any further claim on Husband's retirement benefits, including any service credit. (Gov. Code, § 21292, subds. (a), (d).) Husband, who was then married to Theressa Lynn Sonne (Wife), exercised his right to redeposit the contributions (*id.*, § 20751) and paid for it with community funds through monthly deductions from his salary. By the time Husband and Wife had separated, the community had redeposited 70.83 percent of the scheduled payments, and the question arose: What was the community's share of the service credit from the Husband-Dalia marriage?

The trial court and the Court of Appeal agreed with Wife that the community was entitled to 70.83 percent of the service credit because the community had redeposited 70.83 percent of the member contributions for that period of service. Husband contends that such an apportionment vastly overstated the community's interest, in that it accorded no weight or value to Husband's service as a deputy sheriff during that earlier period, which had supplied the consideration for the service credit. Amicus curiae Barbara A. DiFranza, Certified Family Law Specialist, contends further that since community funds contributed only to the annuity component of the retirement allowance, the community was entitled only to a pro tanto share of the annuity—and not to a share of the much larger pension component, which was funded by employer contributions.

We agree with amicus curiae. We therefore reverse the judgment of the Court of Appeal and remand the matter for reconsideration of the apportionment of the service credit arising from the Husband-Dalia marriage.

## BACKGROUND

In March 1971, Husband began working as a deputy sheriff for Monterey County. He was elected Sheriff of Monterey County in 1998 and retired in December 2002. He earned 31.918 years of service credit in the CalPERS retirement system.

For present purposes, we discuss two of Husband's marriages, each of which ended in dissolution. The first marriage, to Dalia, ended in 1991 after more than 17 years. Under the original divorce settlement, Husband was awarded all CalPERS pension and retirement rights earned during the marriage. In return, Husband was to make an offsetting cash payment to Dalia.

Husband married Wife on November 12, 1994. In 1995, because Husband could no longer keep up with the equalization payments to Dalia, he transferred to her one-half of the CalPERS service credit earned during their prior marriage. Accordingly, CalPERS credited Dalia's nonmember account with 8.677 years of service credit and $42,555.64 in member contributions and interest. When Dalia withdrew the contributions and interest, Husband elected to redeposit them into his member account through a paycheck deduction over a period of years. The deduction at first was taken from his salary and then, when he retired, from his monthly retirement allowance. The redeposit ultimately restored the service credit to his member account.

Husband filed for dissolution of his marriage to Wife in January 2004, after he had retired, but the deductions from his retirement allowance for the redeposit continued. The total of the deductions taken during his marriage to Wife was $31,938.92. The member contributions and accumulated interest over Husband's entire career totaled $238,064.35. The actuarial present value of the retirement benefit at the time of trial was in excess of $2 million. The difference between Husband's total contributions and the actuarial present value of the retirement account was funded entirely by Husband's employer as a "current period expense."

In the dissolution proceeding arising from the Husband-Wife marriage, the parties disputed the character of the redeposited member contributions and the service credit arising from the Husband-Dalia marriage, among other issues.

Husband's expert, Ronald G. Reddall, opined that the service credit was Husband's separate property and that the community had a right only to

reimbursement of the community funds used to make the redeposit. However, when asked whether the community would be entitled to "a pro tanto share of the appreciation," Reddall replied that he "would leave that to the lawyers."

Wife's expert, George McCauslan, did not address the issue of the redeposited member contributions or the service credit in his trial testimony. In an unsworn posttrial letter that was considered by the trial court, he articulated his understanding that the service credit should be allocated between community and separate property in the same proportion by which those estates had contributed to the redeposit. He determined that community funds had been used to redeposit 70.67 percent of the member contributions from the Husband-Dalia marriage and concluded that the community should therefore be allocated an additional 6.132 years (0.7067 x 8.677 years) of service credit. When these years were added to the service credit that was earned during the Husband-Wife marriage, McCauslan calculated the community share of the retirement allowance to be 41.22 percent.

Husband offered an unsworn posttrial letter from Reddall, who determined the community share through a different method, which assigned only an additional 0.47 years of service credit to the community. Reddall began with an estimate of the actuarial present value of the 8.677 years of service credit: $594,322. Because the community had redeposited only 5.374 percent ($31,938.92 divided by $594,322) of the actuarial value of the service credit, the community was entitled only to 5.374 percent of the 8.677 service years—which is 0.47 service years.

The trial court largely adopted Wife's approach. It calculated that the community had provided $31,938.92 of the $45,090.24 in redeposited member contributions (or 70.83 percent) and concluded that the community share of the service credits from the Husband-Dalia marriage was therefore 70.83 percent. When added to the service credit earned during the Husband-Wife marriage, the total community share of the retirement allowance was calculated by the trial court to be 41.22 percent, and Wife was awarded one-half of this as her share.

The Court of Appeal affirmed this aspect of the judgment, but on different grounds. The Court of Appeal agreed that Husband had a separate property interest in the premarital service to his employer, "which created his right to repurchase the service credits." However, the court found that Husband had commingled community property with his separate property when he used community funds to redeposit member contributions in order to recoup the premarital service credit, and he did not "indisputably establish" or "unequivocally trace" what proportion of the service credit was attributable to his separate property and what proportion to the community so as to overcome

the presumption that the service credit became community property. (See Fam. Code, § 760.) According to the Court of Appeal, the trial court "*could have credited*" Reddall's allocation of the respective shares but "*was not required to credit* this evidence," since "[t]he trial court was vested with the power to credit or discredit Husband's evidence. If it discredited Husband's evidence, it could properly conclude that the community property presumption applicable to property purchased during a marriage with community funds had not been rebutted, and therefore the repurchased service credits were community property." The appellate court also rejected Husband's suggestion that the community be reimbursed for its contribution instead of being awarded an interest in his retirement allowance.

We granted Husband's petition for review and now reverse.

## DISCUSSION

■ Generally, all property acquired by a spouse during marriage prior to separation is community property. (Fam. Code, §§ 760, 770.) Community property "may include the right to retirement benefits accrued by the employee spouse as deferred compensation for services rendered. . . . The right to retirement benefits 'represent[s] a property interest; to the extent that such [a] right[] derive[s] from employment' during marriage before separation, it 'comprise[s] a community asset . . . .' [Citation.] 'Throughout our decisions we have always recognized that the community owns all [such] rights attributable to *employment during marriage*' before separation." (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 177 [74 Cal.Rptr.2d 825, 955 P.2d 451], italics added & citation omitted.) We review the superior court's characterization of Husband's service credit from the Husband-Dalia marriage as community property—a mixed question of law and fact that is predominantly one of law—de novo. (*Id.* at p. 184; *In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734 [91 Cal.Rptr.3d 427].)

■ In a dissolution proceeding, "[t]he superior court must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone. [Citations.] It has discretion in the choice of methods. . . . Whatever the method that it may use, however, the superior court must arrive at a result that is 'reasonable and fairly representative of the relative contributions of the community and separate estates.' " (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 187, citation omitted.) In awarding the Husband-Wife community 70.83 percent of the service credit earned during the Husband-Dalia marriage, the lower courts failed to make a reasonable and fair allocation of the respective contributions by Husband and the community and failed as well to apprehend the two

distinct components of Husband's retirement allowance—the annuity and the pension—only one of which derived from Husband-Wife community contributions.

The trial court assumed that the community acquired a 70.83 percent share of the service credit arising from the Husband-Dalia marriage because the community had redeposited 70.83 percent of the member contributions for that time period. The trial court's approach, in essence, is that the community *purchased* the service credit by redepositing member contributions. But a redeposit of member contributions for a prior period of service does not constitute consideration for the service credit for that period; it is merely a condition precedent to a credit for that previously rendered service. (See Gov. Code, § 20756.) The service credit (and the pension component of the retirement allowance) are more correctly described as " 'a form of deferred compensation for services rendered.' " (*In re Marriage of Skaden* (1977) 19 Cal.3d 679, 686 [139 Cal.Rptr. 615, 566 P.2d 249].) The trial court's analysis gave no weight whatsoever to the *service* Husband rendered as a deputy sheriff during those years, all of which preceded the Husband-Wife marriage.

In other words, the trial court apportioned to the community the same share of service credit it would have received had Husband and Wife actually been married during those years of Husband's service to Monterey County. This apportionment failed to consider that the right to the 8.677 years of service credit was Husband's separate property, which preexisted the Husband-Wife marriage, inasmuch as the service credit was offered in consideration for that prior 8.677 years of service. (See *In re Marriage of Lehman, supra,* 18 Cal.4th at pp. 182–183; *In re Marriage of Lucero* (1981) 118 Cal.App.3d 836, 841 [173 Cal.Rptr. 680] (*Lucero*).)

*Lucero*, which involved almost the mirror image of the present case, is instructive. There, the husband redeposited his federal employee retirement contributions after he and his wife had separated, using his own separate funds. Part of the redeposited contributions related to service years during the marriage. (*Lucero, supra,* 118 Cal.App.3d at p. 839.) In rejecting the husband's claim that the increase in his retirement benefit due to the redeposit was entirely his separate property, the Court of Appeal recognized that the substantial increase in the husband's retirement benefit "was possible only as consideration for husband's service" during the marriage (*id.* at p. 841) and that " 'the community owns *all* pension rights attributable to employment during the marriage.' " (*Id.* at p. 842.) Accordingly, the court concluded that the wife had a right "to share in the increased retirement benefits upon payment of her pro rata share of the redeposit." (*Ibid.*)

The service credit at issue here, by contrast, was not attributable to employment during the Husband-Wife marriage. Rather, it was earned during the Husband-Dalia marriage and was originally an asset of that community. In the divorce proceeding in 1991, Husband and Dalia entered into a stipulated judgment that awarded the entirety of the community's CalPERS pension and retirement rights to Husband. These rights remained Husband's separate property at the time of Husband's marriage to Wife in 1994. (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 788 [148 Cal.Rptr. 9, 582 P.2d 96] ["that portion of the husband's pension attributable to employment before marriage" is "correctly" classified "as separate property"]; Fam. Code, § 770, subd. (a)(1).) In May 1995, Husband transferred one-half of the accumulated member contributions and service credit attributable to the Husband-Dalia marriage to Dalia to satisfy an outstanding obligation to Dalia. Dalia's share was placed in a separate nonmember account (Gov. Code, § 21290), and it entitled her to receive "a retirement allowance based on the service retirement formula applicable to the service credited to the nonmember," which would "consist of a *pension* and an *annuity*, the latter of which shall be derived from the nonmember's accumulated contributions." (Gov. Code, former § 21215.8, italics added, added by Stats. 1988, ch. 542, § 6, pp. 1996, 1999 & repealed by Stats. 1995, ch. 379, § 1, p. 1955; see now § 21298, subd. (b).)

Husband retained, as his separate property, a right to recoup that service credit in the event Dalia were to withdraw the assets in her nonmember account. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 846, fn. 8 [126 Cal.Rptr. 633, 544 P.2d 561] ["The law has long recognized that a contingent future interest is property [citation] no matter how improbable the contingency . . ."]; *In re Marriage of Joaquin* (1987) 193 Cal.App.3d 1529, 1533 [239 Cal.Rptr. 175] [" ' "property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage . . ." ' "].) Dalia did just that (see Gov. Code, § 21292), and Husband elected to exercise his right to redeposit his member contributions plus interest. (See *id.*, §§ 20750, 20751.) Had he made that redeposit with separate property funds, the recouped service credit would unquestionably have been his separate property. (Cf. *In re Marriage of Shea* (1980) 111 Cal.App.3d 713, 717 [169 Cal.Rptr. 490] ["where a fringe benefit is earned entirely by employment before marriage, it is the separate property of the employee even if received after marriage . . ."].) Wife errs in characterizing Husband's right to redeposit his member contributions as an investment opportunity governed by the interspousal fiduciary duty (see Fam. Code, § 1100, subd. (e)), inasmuch as the right to recover the prior service credit was Husband's separate property.

We therefore agree with the Court of Appeal that the service credit earned during the Husband-Dalia marriage was Husband's separate property at the time Husband invoked his right to redeposit his member contributions plus interest. The rest of the Court of Appeal's analysis, however, is problematic. The appellate court devised a new theory to uphold the trial court's apportionment of the Husband-Dalia service credit—i.e., that Husband had used community funds to make the redeposit, thus commingling community property with his separate property, yet had failed to discharge his burden of demonstrating "what proportion of the value of the repurchased service credits was attributable to his separate property as opposed to the community's funds." (See *See v. See* (1966) 64 Cal.2d 778, 783 [51 Cal.Rptr. 888, 415 P.2d 776].) Where separate and community funds are commingled in such a manner that it is impossible to trace the source, the Court of Appeal continued, " ' "the whole will be treated as community property . . . ." ' " (Quoting *In re Marriage of Mix* (1975) 14 Cal.3d 604, 611 [122 Cal.Rptr. 79, 536 P.2d 479].)

■ The Court of Appeal's commingling analysis rests on the erroneous legal assumption that Husband's retirement benefit was a unitary and indivisible asset. It is not. As amicus curiae Barbara A. DiFranza, a certified family law specialist, points out, Husband's retirement allowance under the Public Employees' Retirement Law (Gov. Code, § 20000 et seq.) consists of two distinct components: an annuity and a pension. (Gov. Code, § 21350.) "[C]ontributions made by a member" are converted on retirement to an " '[a]nnuity,' " which makes "payments for life" and is equal in value to the accumulated normal contributions and interest in the member's individual account. (*Id.*, § 20018; see *id.*, §§ 20012, 21351.) "[C]ontributions made from employer controlled funds," in turn, form a " '[p]ension,' " which also makes "payments for life." (*Id.*, § 20054.) The retirement allowance thus consists of "a *pension* derived from the contributions of the employer sufficient when added to the service retirement *annuity* that is derived from the accumulated normal contributions of the member at the date of his or her retirement to equal 3 percent of his or her final compensation at retirement, multiplied by the number of years of . . . local safety service subject to this section with which he or she is credited at retirement." (*Id.*, § 21362.2, subd. (a), italics added; see *id.*, § 20576, subd. (a).)

In this case, the community made a redeposit of a portion of Husband's accumulated contributions (Gov. Code, § 20012) for the period of the Husband-Dalia marriage. Those contributions were converted into an annuity upon Husband's retirement. The obligation of the employer to contribute to the pension component, on the other hand, derived from Husband's service during the Husband-Dalia marriage. Accordingly, the community had a claim only on the annuity component relating to the time period of the Husband-Dalia marriage, and was entitled only to a pro tanto share of *that portion* of

Husband's retirement allowance. (Cf. 26 U.S.C. § 414(k)(2) ["A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall . . . [¶] . . . [¶] . . . be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan . . ."].)

Wife contends that Husband forfeited his right to seek apportionment on this basis by failing to present evidence at trial concerning the appropriate apportionment of the annuity portion of the retirement allowance. However, Wife presented no evidence at trial concerning apportionment, either. As the Court of Appeal remarked, "Wife's expert did not address the issue of the repurchased service credits in his trial testimony." Indeed, the issue was not even joined until Husband's expert addressed the issue in his posttrial letter and Wife's expert submitted a responsive letter. Notably, neither the trial court nor the Court of Appeal ever asserted that Husband had forfeited his right to contest the apportionment of the service credit, and we decline to interpose a procedural bar for the first time here.

Instead, the Court of Appeal concluded that the trial court had chosen not to credit the evidence that Husband had presented—and that the trial court was within its discretion to do so. But both the trial court and the Court of Appeal made an error of law in assuming that Husband's redeposit of member contributions with community funds entitled the community to a corresponding fraction of the entire retirement allowance attributable to the years of the Husband-Dalia marriage. In their view, since the community had redeposited 70.83 percent of the member contributions from the Husband-Dalia marriage, the community was entitled to 70.83 percent of the service credit earned during the Husband-Dalia marriage. But, as demonstrated above, the redeposit was of member contributions, and member contributions are used to purchase the service retirement annuity, which is only one component of the retirement allowance. (Gov. Code, §§ 20018, 21362.2, subd. (a).) The remainder of the retirement allowance is supplied by the pension, which derives from the contributions of the *employer* and which, the record shows, is several orders of magnitude larger than the accumulated member contributions. The Husband-Wife community did not contribute to that larger component of the retirement allowance, and it was therefore an abuse of discretion to award any share of it to the community. (Cf. *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1427 [128 Cal.Rptr.2d 31] ["there may be reason to consider the value of the acreage separately from that of the home, if the improvements enhanced only the residence"].)

Accordingly, the trial court was correct in its general statement that "Wife is entitled to a *pro tanto* share of the appreciation of the [retirement benefit] in proportion to her community share of its purchase." But the trial court abused its discretion in assuming that the community, by redepositing member contributions under Government Code section 20751, had any entitlement at all to the pension component of Husband's retirement benefit arising from the Husband-Dalia service years. The trial court should instead have apportioned to the community only a pro tanto share of the annuity.[1] (See Gov. Code, § 20576, subd. (a)(2).)

Husband asserts that his expert already performed this calculation in his posttrial letter. In that letter, Reddall derived the community's share of the service years arising from the Husband-Dalia marriage by dividing the community's redeposit of member contributions by the total actuarial present value of the service credit for that period. Amicus curiae proposes a somewhat different calculation; she derives the community's share of the retirement allowance by dividing the community's redeposit of member contributions by the actuarial present value of the total retirement allowance.

As we stated above, a trial court in general has discretion in selecting its method of apportionment, so long as the result "is 'reasonable and fairly representative of the relative contributions of the community and separate estates.' " (*In re Marriage of Lehman, supra,* 18 Cal.4th at p. 187.) Tracing the community's contributions (and accumulated interest thereon) in the annuity component of Husband's retirement allowance would satisfy that standard. We believe, though, that it is most prudent to grant the trial court the opportunity to exercise its discretion as to apportionment of the annuity component in the first instance, especially since the court did not take evidence at trial concerning the apportionment issue, the experts' posttrial letters on the issue were unsworn, and neither expert was available for cross-examination about their findings and opinions on the issue. We therefore remand the matter to the Court of Appeal for remand to the trial court so it may take evidence and select and apply the appropriate method of apportionment. (*In re Marriage of Skaden, supra,* 19 Cal.3d at p. 689; *Bono v. Clark, supra,* 103 Cal.App.4th at pp. 1424–1425.)

---

[1] Wife seems to suggest that the trial court's apportionment was nonetheless fairly representative of the relative contributions of the community and separate estates, in that Husband's salary and the value of his retirement benefit increased substantially because of his tenure as Sheriff-Coroner-Public Administrator of Monterey County during their marriage. Nothing in the record, however, indicates that the trial court apportioned Husband's retirement benefit on this basis. Moreover, a trial court has discretion to accord equal weight to each year of service in calculating the community interest in retirement rights, even though the employee's salary may be much higher in the later years than the early years. (*In re Marriage of Gowan* (1997) 54 Cal.App.4th 80, 90–91 [62 Cal.Rptr.2d 453].)

## DISPOSITION

The judgment of the Court of Appeal is reversed to the extent it affirmed the trial court's apportionment of the service credit arising from the Husband-Dalia marriage and is otherwise affirmed. The matter is remanded to the Court of Appeal for further proceedings consistent with our opinion.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.