[No. H030110. Sixth Dist. June 28, 2010.]

In re the Marriage of GORDON ALBERT and THERESSA LYNN SONNE.
GORDON ALBERT SONNE, Appellant, v.
THERESSA LYNN SONNE, Appellant.

1566

**COUNSEL**

Tarkington, O'Neill, Barrack & Chong and Robert A. Roth for Appellant Gordon Albert Sonne.

Law Office of Bernard N. Wolf, Bernard N. Wolf; Law Office of Billie C. French and Billie C. French for Appellant Theressa Lynn Sonne.

**OPINION**

**MIHARA, J.**—Both husband and wife appeal from the trial court's decision dividing their interests in husband's California Public Employees' Retirement System (PERS) retirement allowance and survivor benefit. Husband's first contention is that the trial court abused its discretion in concluding that reacquired service credit for husband's years of service to his employer prior to his marriage to wife was community property. The opportunity to reacquire this service credit arose when husband's previous spouse withdrew the retirement contributions and interest in her portion of husband's PERS retirement account. This service credit was reacquired by redepositing the contributions and interest using community funds during the marriage. Husband maintains that this service credit was his separate property, and the community was merely entitled to a pro tanto interest. Husband's second contention is that the trial court abused its discretion in assigning to wife the entire survivor benefit, of which she was the irrevocable beneficiary, in exchange for her reimbursing husband for the monthly cost (a reduction in husband's retirement allowance) of the survivor benefit. The value of the

survivor benefit far exceeded its cost. Husband claims that the trial court should have awarded wife only her share of the community's interest in each survivor benefit payment. Wife asserts that, if we credit either of husband's contentions, we should order the trial court to reconsider the amount of spousal support and attorney's fees awarded to her.[1]

We conclude that the trial court abused its discretion both in concluding that the reacquired service credit was entirely community property and in awarding the entire survivor benefit to wife. Because the trial court's actions on remand may significantly affect wife's financial resources, we agree with wife that it is appropriate for the trial court to have the opportunity to reconsider spousal support and attorney's fees on remand. We reverse the judgment and remand the matter to the trial court with directions.

## I. California's Public Employees' Retirement System

One of the benefits offered to many public employees in California is membership in PERS. "Members of CalPERS, once vested, participate in a defined benefit retirement plan, which supplies a monthly retirement allowance under a formula comprising factors such as final compensation, service credit (i.e., the credited years of employment), and a per-service-year multiplier. The retirement allowance consists of an *annuity* (which is funded by member contributions deducted from the member's paycheck and interest thereon) and a *pension* (which is funded by employer contributions and which must be sufficient, when added to the annuity, to satisfy the amount specified in the benefit formula). (Gov. Code, §§ 21350, 21362.2, subd. (a), 21363.1, subd. (a).)" (*In re Marriage of Sonne* (2010) 48 Cal.4th 118, 121 [105 Cal.Rptr.3d 414, 225 P.3d 546] (*Sonne*).)

When a former spouse acquires a portion of a PERS member's PERS retirement benefit account in a dissolution, the former spouse may withdraw that portion of the contributions and interest and obtain a refund of those monies, but by doing so the former spouse waives all of his or her rights in the member's PERS retirement benefits. (Gov. Code, § 21292.) After such a refund, "any service credit eligible for purchase . . . shall be deemed the exclusive property of the member." (Gov. Code, § 21294, subd. (e); see *id.*, § 21292.) The member may reacquire that service credit by redepositing the withdrawn contributions along with the interest that would have been credited on the withdrawn contributions. (Gov. Code, § 20750.)

At the time of retirement, a PERS member may either elect an unmodified retirement allowance, under which the retiree will receive full monthly PERS

---

[1] Wife initially contended that the trial court erred in terminating jurisdiction for spousal support, but she has withdrawn that argument.

retirement allowance payments, or select from a group of options under which the retiree's monthly retirement allowance payments are reduced so that a selected beneficiary may receive "survivor benefit" payments after the retiree's death, if the beneficiary survives the retiree.[2]

One of the options for a PERS retiree is known as "Option 2." Option 2 is "the right to have a retirement allowance paid a member until his or her death and thereafter to his or her beneficiary for life." (Gov. Code, § 21456.) An Option 2 election and the designation of the beneficiary are generally irrevocable after retirement.[3] (Gov. Code, §§ 21454, 21456, 21492.) The beneficiary of an "Option 2" survivor benefit need not be the retiree's spouse or even the retiree's relative.

## II.  Factual Background

Husband became employed as a Monterey County deputy sheriff in March 1971. One of the benefits of his employment was PERS membership. During a portion of his employment by Monterey County, husband was married to his second wife, Dalia. Husband divorced Dalia in 1991. Dalia ultimately received an interest in husband's PERS retirement as part of the division of their community property. Husband, who remained employed by Monterey County, married wife in November 1994. In 1995, Dalia's interest in husband's PERS retirement was cashed out by her withdrawal of her share of husband's contributions and interest from his PERS retirement account.

Husband subsequently arranged to redeposit the contributions and interest withdrawn by Dalia so that he could reacquire the service credit to which they related. The redeposit was accomplished by monthly deductions from his paychecks (and later his retirement allowance payments) beginning in 1997 and continuing throughout his marriage to wife. The total of these deductions during husband's marriage to wife was $31,938.92.[4]

---

[2] If a retiree selects an unmodified retirement allowance, a "survivor continuance" benefit may be payable upon the member's death to the member's surviving spouse.

[3] There is one exception to this irrevocability. If the beneficiary is a spouse, the marriage is dissolved, and "the judgment dividing the community property awards the total interest in [PERS] to the member . . . ," the member may elect to have his or her retirement allowance adjusted back to what it would have been if the member had not elected Option 2 or may be permitted to name a different beneficiary. (Gov. Code, § 21456; see *id.*, §§ 21454, 21462, 21492.) As wife was not willing to waive all interest in husband's PERS pension, husband was not entitled to revoke his Option 2 election or change the beneficiary of the survivor benefit.

[4] The deductions continued after husband's separation from wife, as husband needed to repay a total of $42,555.64 to complete the redeposit.

In 1998, husband was elected sheriff. In February 2002, husband's years of service and age qualified him for the maximum level of retirement benefits. In November 2002, husband selected Option 2 PERS retirement as his choice of retirement plans, and he irrevocably named wife as the beneficiary of the survivor benefit funded by Option 2.[5] Husband retired in December 2002.

### III. Procedural Background

Husband filed for dissolution of his marriage to wife in January 2004.[6] In August 2004, wife filed a motion seeking spousal support and attorney's fees. At wife's request, PERS was joined in the action in March 2005.

At the June 2005 trial, husband's expert testified that the actuarial value of husband's stream of retirement allowance payments under Option 2, not including the value of the survivor benefit, was $1,724,817. The value of husband's retirement allowance was primarily attributable to funds contributed by Monterey County, and only about $250,000 was attributable to husband's contributions and the interest on those contributions.

Husband's expert testified that the value of husband's retirement allowance was 6.6 percent lower than it would have been if he had selected the unmodified retirement allowance rather than Option 2.[7] Husband's monthly retirement allowance was, at the time of trial, approximately $684 less than the unmodified retirement allowance would have been. The actuarial value of the reduction in husband's stream of monthly retirement allowance payments was $121,875. At the time of trial, the survivor benefit was projected to pay wife $4,496 per month for the remainder of her lifetime after husband's death.

Husband's expert characterized the survivor benefit as "a life insurance policy." He testified that the actuarial value of the survivor benefit was $403,291. Husband's expert added the actuarial value of husband's retirement allowance to the actuarial value of the survivor benefit and came up with a total actuarial value of $2,128,108. He determined that wife's community property share, based solely on the years of the marriage, was $250,000. Husband's expert asserted that wife should be required to make an equalizing payment to husband of $153,300 to account for the difference between her

---

[5] Husband is 12 years older than wife. The calculation of the cost of the survivor benefit is based on the age and gender of the designated beneficiary.

[6] Husband asserted that the couple separated in August 2003, but the trial court found that the date of separation was in January 2004.

[7] Husband's expert noted that "the taxpayers" subsidize the survivor benefit, so that husband's retirement allowance is not reduced by the full amount that would actually be required to fully fund the survivor benefit.

community property share of the total actuarial value ($250,000) and the actuarial value of the survivor benefit ($403,291). His opinion was that wife was not entitled to any share of husband's retirement allowance because she would receive far more than her community property share of husband's retirement benefits as a whole by receiving the entire survivor benefit.

In calculating wife's share of husband's retirement benefits, husband's expert concluded that the service credit reacquired by the redeposit of the contributions and interest withdrawn by Dalia was husband's separate property. His position was that the community had only a right to reimbursement of the community's funds used to fund the redeposit. However, when he was asked whether the community might have a "pro tanto" interest, he said he "would leave that to the lawyers . . . ."

Wife's expert reviewed the calculations of husband's expert and concluded that those calculations were accurate. However, he disagreed with husband's proposed method of division. Wife's expert testified that the *cost* of the survivor benefit to husband was $122,000, and he suggested that the survivor benefit be divided by requiring wife to reimburse husband for that cost in return for her receiving the entire survivor benefit. He characterized his disagreement with husband's expert as "a legal issue[,] . . . not an actuarial issue."

Wife's expert did not address the issue of the reacquired service credit in his trial testimony, but he did address this issue in a posttrial submission that was considered by the trial court. He asserted that the portion of the reacquired service credit that was attributable to redeposit of community funds during the marriage should be considered community property. Wife's expert asserted that 66.5 percent of the 8.677 years of the reacquired service credit was acquired by the redeposit of community funds during the marriage, and he therefore concluded that 5.77 of the 8.677 years of service credit that were reacquired were community property. Husband's expert had concluded that wife's interest in husband's retirement benefits was 11.75 percent, based on 7.3 years of service during the marriage. Wife's expert concluded that the addition of 5.77 years of additional community property interest would make wife's share 21.03 percent.

Judgment was entered in February 2006. The court concluded that the reacquisition of 5.8 years of service credit by the redeposit of community funds during the marriage resulted in that service credit being community property and increased the community share of husband's retirement benefits to 41.22 percent. The court determined that wife's share of husband's retirement benefits was therefore 20.61 percent. The court found that the survivor benefit was not a "gift" to wife, but wife was nevertheless entitled to

the entire survivor benefit. "To fairly apportion the cost of the benefit, the court orders that the monthly cost of this benefit, which is approximately $680.00 per month, will be paid entirely by wife, commencing at the time of her first payment of her share of the PERS retirement by a reduction of this sum from her monthly benefit otherwise payable. This will make husband whole, and provide him with a monthly benefit for his lifetime equal to that which would have been paid to him had he not ever elected the Option 2 survivor benefits." "The court finds that an equal and fair division of the survivor benefits will occur if these benefits are paid for by wife and husband receives his share of PERS in an amount equal to the unmodified allowance had he not chosen Option 2."

The court set spousal support at $1,500 per month, but it directed that husband continue to pay wife $3,065 per month until wife began receiving her share of husband's monthly retirement allowance payments.[8] The court retained jurisdiction over spousal support "until July 1, 2008, at which time, husband's obligation to pay support shall terminate." The court ordered husband to pay $10,000 toward wife's attorney's fees and costs. Husband timely filed a notice of appeal, and wife filed a notice of cross-appeal.

On appeal, this court originally upheld the trial court's decision with regard to the reacquired service credit but reversed the trial court's ruling as to the survivor benefit. Husband's petition for review in the California Supreme Court was granted, and the court limited its review to the reacquired service credit issue. The California Supreme Court reversed this court's ruling solely "to the extent it affirmed the trial court's apportionment of the service credit arising from the husband-Dalia marriage" and remanded the matter "to the Court of Appeal for further proceedings consistent with our opinion." (*Sonne, supra,* 48 Cal.4th at p. 130.)

## IV.  Husband's Appeal

Both of the issues raised by husband concern the trial court's allocation between the parties of their interests in husband's PERS retirement benefits. Husband contends that the trial court abused its discretion in concluding that the portion of the reacquired service credit that was attributable to the redeposit of community funds during the marriage was community property and in allocating the entire survivor benefit to wife in return for her payment of the "cost" of that benefit.

---

[8] Husband had been paying $3,065 per month in spousal support to wife pending judgment in the dissolution action.

We review the trial court's rulings for abuse of discretion. (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966 [22 Cal.Rptr.2d 537].) " ' "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." ' " (*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294 [62 Cal.Rptr.3d 309].)

## A. Reacquired Service Credit

It was undisputed that the community estate included the portion of husband's retirement benefits that arose from husband's 7.3 years of service to his employer during his marriage to wife.[9] Husband claims that the trial court abused its discretion in concluding that the community estate also included the 5.8 years of service credit reacquired during the marriage with community funds. He argues that the reacquired service credit was primarily his separate property because this service credit was available for reacquisition only because he had provided these separate property years of service to his employer prior to his marriage to wife.[10]

■ The California Supreme Court concluded in *Sonne, supra,* 48 Cal.4th 118 that the trial court had indeed abused its discretion in determining that the reacquired service credit was entirely community property. "Generally, all property acquired by a spouse during marriage prior to separation is community property. (Fam. Code, §§ 760, 770.) Community property 'may include the right to retirement benefits accrued by the employee spouse as deferred compensation for services rendered. . . . The right to retirement benefits "represent[s] a property interest; to the extent that such [a] right[] derive[s] from employment" during marriage before separation, it "comprise[s] a community asset . . . ." [Citation.] "Throughout our decisions we have always recognized that the community owns all [such] rights attributable to *employment during marriage*" before separation.' (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 177 [74 Cal.Rptr.2d 825, 955 P.2d 451], italics added.) We

---

[9] Although husband was employed for a longer period than 7.3 years during his marriage to wife, his retirement benefits reached their maximum in February 2002, 7.3 years after he married wife in November 1994. At that point, husband had 31 years of service. Thus, under the time rule, as applied by the trial court, the community share of his retirement benefits based on his years of service during the marriage was 23.5 percent (7.3 divided by 31 equals .235), and wife's share of his retirement benefits based on these years of service was 11.75 percent. There was no dispute about these numbers.

[10] 8.677 years of service credit was reacquired, but the trial court found that community funds were utilized to fund the reacquisition of only 5.8 of these years of service credit. The parties do not directly challenge the court's determination that 5.8 of the 8.677 years of service credit were reacquired during the marriage with community funds.

review the superior court's characterization of husband's service credit from the husband-Dalia marriage as community property—a mixed question of law and fact that is predominantly one of law—de novo. (*Id.* at p. 184; *In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734 [91 Cal.Rptr.3d 427].)

■ "In a dissolution proceeding, '[t]he superior court must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone. [Citations.] It has discretion in the choice of methods. . . . Whatever the method that it may use, however, the superior court must arrive at a result that is "reasonable and fairly representative of the relative contributions of the community and separate estates." ' (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 187, citations omitted.) In awarding the husband-wife community 70.83 percent of the service credit earned during the husband-Dalia marriage, the [trial] court[] failed to make a reasonable and fair allocation of the respective contributions by husband and the community and failed as well to apprehend the two distinct components of husband's retirement allowance—the annuity and the pension—only one of which derived from husband-wife community contributions.

■ "The trial court assumed that the community acquired a 70.83 percent share of the service credit arising from the husband-Dalia marriage because the community had redeposited 70.83 percent of the member contributions for that time period. The trial court's approach, in essence, is that the community *purchased* the service credit by redepositing member contributions. But a redeposit of member contributions for a prior period of service does not constitute consideration for the service credit for that period; it is merely a condition precedent to a credit for that previously rendered service. (See Gov. Code, § 20756.) The service credit (and the pension component of the retirement allowance) are more correctly described as ' "a form of deferred compensation for services rendered." ' (*In re Marriage of Skaden* (1977) 19 Cal.3d 679, 686 [139 Cal.Rptr. 615, 566 P.2d 249].) The trial court's analysis gave no weight whatsoever to the *service* husband rendered as a deputy sheriff during those years, all of which preceded the husband-wife marriage.

"In other words, the trial court apportioned to the community the same share of service credit it would have received had husband and wife actually been married during those years of husband's service to Monterey County. This apportionment failed to consider that the right to the 8.677 years of service credit was husband's separate property, which preexisted the husband-wife marriage, inasmuch as the service credit was offered in consideration for that prior 8.677 years of service. (See *In re Marriage of Lehman, supra*, 18

Cal.4th at pp. 182–183; *In re Marriage of Lucero* (1981) 118 Cal.App.3d 836, 841 [173 Cal.Rptr. 680] (*Lucero*).)" (*Sonne, supra*, 48 Cal.4th at pp. 124–125.) Thus, "the service credit earned during the husband-Dalia marriage was husband's separate property at the time husband invoked his right to redeposit his member contributions plus interest." (*Sonne*, at p. 127.)

■ ". . . Husband's retirement allowance under the Public Employees' Retirement Law (Gov. Code, § 20000 et seq.) consists of two distinct components: an annuity and a pension. (Gov. Code, § 21350.) '[C]ontributions made by a member' are converted on retirement to an ' "[a]nnuity," ' which makes 'payments for life' and is equal in value to the accumulated normal contributions and interest in the member's individual account. (*Id.*, § 20018; see *id.*, §§ 20012, 21351.) '[C]ontributions made from employer controlled funds,' in turn, form a ' "[p]ension," ' which also makes 'payments for life.' (*Id.*, § 20054.) The retirement allowance thus consists of 'a *pension* derived from the contributions of the employer sufficient when added to the service retirement *annuity* that is derived from the accumulated normal contributions of the member at the date of his or her retirement to equal 3 percent of his or her final compensation at retirement, multiplied by the number of years of . . . local safety service subject to this section with which he or she is credited at retirement.' (*Id.*, § 21362.2, subd. (a), italics added; see *id.*, § 20576, subd. (a).)

"In this case, the community made a redeposit of a portion of husband's accumulated contributions (Gov. Code, § 20012) for the period of the husband-Dalia marriage. Those contributions were converted into an annuity upon husband's retirement. The obligation of the employer to contribute to the pension component, on the other hand, derived from husband's service during the husband-Dalia marriage. Accordingly, the community had a claim only on the annuity component relating to the time period of the husband-Dalia marriage, and was entitled only to a pro tanto share of *that portion* of husband's retirement allowance." (*Sonne, supra*, 48 Cal.4th at pp. 127–128.)

■ "[T]he trial court abused its discretion in assuming that the community, by redepositing member contributions under Government Code section 20751, had any entitlement at all to the pension component of husband's retirement benefit arising from the husband-Dalia service years. The trial court should instead have apportioned to the community only a pro tanto share of the annuity." (*Sonne, supra*, 48 Cal.4th at p. 129.) "[A] trial court in general has discretion in selecting its method of apportionment, so long as the result 'is "reasonable and fairly representative of the relative contributions of the community and separate estates." ' (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 187.) Tracing the community's contributions (and accumulated interest thereon) in the annuity component of husband's retirement allowance

would satisfy that standard. We believe, though, that it is most prudent to grant the trial court the opportunity to exercise its discretion as to apportionment of the annuity component in the first instance, especially since the court did not take evidence at trial concerning the apportionment issue, the experts' posttrial letters on the issue were unsworn, and neither expert was available for cross-examination about their findings and opinions on the issue." (*Sonne, supra*, 48 Cal.4th at p. 129.)

Consequently, as directed by the California Supreme Court, we will "remand to the trial court so it may take evidence and select and apply the appropriate method of apportionment." (*Sonne, supra*, 48 Cal.4th at p. 129.)

### B. Survivor Benefit

Husband contends that the trial court abused its discretion in awarding wife the *entire* survivor benefit without requiring her to make an equalizing payment to him for half of the *actuarial value* of the survivor benefit. He maintains that simply requiring wife to pay the *cost* to husband of the survivor benefit out of her share of his retirement allowance was not a proper division of the community and separate property interests in this asset. While we do not agree with husband that the trial court was *required* to order wife to make an equalizing payment to him for half of the actuarial value of the survivor benefit, we are convinced that the trial court abused its discretion in its apportionment of the survivor benefit.

"[T]he court shall . . . divide the community estate of the parties equally." (Fam. Code, § 2550.) "[T]he court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, *including all survivor and death benefits*, including, but not limited to, any of the following: [¶] (1) Order the disposition of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550." (Fam. Code, § 2610, subd. (a)(1), italics added.)

"The superior court must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone. . . . Whatever the method that it may use, however, the superior court must arrive at a result that is 'reasonable and fairly representative of the relative contributions of the community and separate estates.'" (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 187 (*Lehman*).)

Family Code sections 2550 and 2610 and *Lehman* required the trial court to apportion the retirement allowance *and the survivor benefit* between the

community and separate interests, and to equally divide the community interest. After making a determination of the relative contributions of the separate and community estates to husband's retirement benefits, the trial court divided the community's interest in husband's monthly retirement allowance payments by awarding wife half of the community's interest in each retirement allowance payment.

However, the trial court did not apply the same method of division to the survivor benefit, even though the relative contributions of the separate and community estates were the same with respect to the survivor benefit as they were with respect to the retirement allowance. Instead, the court allocated 100 percent of the survivor benefit to wife in exchange for wife's compensating husband for this benefit by surrendering a portion of her share of his retirement allowance equal to the *cost* of the survivor benefit. This allocation necessarily equated the *cost* of the survivor benefit with its *value*. Yet the undisputed evidence at trial established that the *value* of the survivor benefit far exceeded its *cost*. The actuarial value of the survivor benefit payments was $403,291; the actuarial value of the reduction in husband's retirement allowance payments, which the court characterized as the *cost* of the survivor benefit, was $121,875. Hence, the trial court's allocation was based on a faulty premise. By compensating husband for only the *cost* of the survivor benefit, when its *value* far exceeded its cost, the trial court failed to reach a result that was fairly representative of the relative contributions of the separate and community estates.

■ Husband was entitled to an allocation that fairly represented his separate and community interest in the survivor benefit. We do not question the trial court's decision to reject husband's proposal that wife receive the entire survivor benefit in exchange for compensating husband for his share of the survivor benefit's *present actuarial value*. The trial court could have concluded that the various contingencies surrounding the survivor benefit weighed against charging wife with its present actuarial value. "It is the trial court's duty 'to weigh and assign the relative risks involved' in dividing retirement pay that is subject to a variety of contingencies." (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1128 [56 Cal.Rptr.3d 341].)

Nevertheless, the trial court's rejection of husband's proposal did not mean that the court could select a method of apportionment that did not reasonably reflect the relative contributions of the separate and community estates, as required by *Lehman*. The trial court could use the same method as it uses to apportion the separate and community interests in husband's retirement allowance. No concerns about future contingencies would have arisen if the trial court had simply divided the survivor benefit using such a method by utilizing a trust. "Any [PERS] allowance may be paid directly to a trust."

(Gov. Code, § 21256.) The trial court could have achieved a result that was representative of the relative contributions of the separate and community estates to the survivor benefit by ordering that the monthly survivor benefit payments, when and if they came due, would be paid into a trust from which wife would receive her share of the community interest in each payment and the remainder of each payment would to go to husband's estate, heirs, or other designee.

While the trial court had discretion to select a fair method of apportioning the survivor benefit, it did not have discretion to select a method that did not comply with Family Code sections 2550 and 2610 and *Lehman.* The method selected by the trial court for apportioning the survivor benefit did not comply with the law. On remand, we are directing the trial court to use a proper method to apportion the retirement allowance, in which the parties' interests are the same as they are with respect to the survivor benefit. Under these circumstances, we are convinced that the appropriate remedy is to order the trial court either to apportion the survivor benefit using the same apportionment as is applied to the retirement allowance, with a trust utilized to direct the payment of husband's share to his estate, heirs or designated beneficiary; or to select another method of apportioning the survivor benefit that complies with Family Code sections 2550 and 2610 and *Lehman.*

## V. Wife's Cross-appeal

Wife contends in her cross-appeal that, if we reverse the trial court's judgment, we should order the court to reconsider both spousal support and attorney's fees on remand. Because our reversal of the judgment is likely to significantly impact wife's share of the community property, which will in turn affect her monetary resources, we believe it is appropriate to permit the trial court to reconsider on remand its spousal support and attorney's fees rulings.

## VI. Disposition

The judgment is reversed, and the matter is remanded to the trial court with directions to (1) "take evidence and select and apply the appropriate method of apportionment" (*Sonne, supra,* 48 Cal.4th at p. 129) of the annuity component of husband's retirement allowance that is " 'reasonable and fairly representative of the relative contributions of the community and separate estates' " (*Lehman, supra,* 18 Cal.4th at p. 187); and (2) either (a) issue an order directing the establishment of a trust into which the survivor benefit payments shall be paid and providing that wife shall receive her share of the community interest in each survivor benefit payment, with the remainder

being paid to husband's estate, heirs or other designee; or (b) select another method of apportioning the survivor benefit that complies with Family Code sections 2550 and 2610 and *Lehman*. The trial court may also choose to reconsider its spousal support and attorney's fees rulings. The parties shall bear their own costs on appeal.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.

A petition for a rehearing was denied July 27, 2010, and the petition of appellant Gordon Albert Sonne for review by the Supreme Court was denied October 13, 2010, S184971.